_____

UNITED STATES of AMERICA )
)
v. )            Criminal No.
)            10-40019-FDS
KIRK LASSEND, )
)
    Defendant. )
_____)

## MEMORANDUM AND ORDER ON
## MOTIONS TO VACATE SENTENCE

**SAYLOR, J.**

    This is a proceeding to vacate and correct a sentence pursuant to 28 U.S.C. § 2255.  In 2011, Kirk Lassend was found guilty by a jury of two charges:  possession of a firearm by a convicted felon and possession of ammunition by a convicted felon, both in violation of 18 U.S.C. § 922(g)(1).  On April 10, 2012, he was sentenced pursuant to the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), to a term of imprisonment of 235 months.

    Lassend seeks to vacate his sentence on six grounds:  (1) ineffective assistance of counsel; (2) unlawful search and seizure; (3) defective indictment; (4) failure of the prosecution to disclose evidence favorable to the defendant; and (5) the unconstitutionality of the residual clause of the ACCA, as determined by the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"); and (6) the district court's lack of jurisdiction over the criminal proceeding.  For the reasons stated below, the motion will be denied.

# I. Background

## A. The Underlying Arrest and Conviction

On July 12, 2010, witnesses placed two separate calls to a 911 operator reporting that a man was walking up and down Day Street in Fitchburg, Massachusetts, with a gun and firing shots into the air. (Tr. at 3:32; Tr. at 5:33). At trial, both callers identified Lassend as the man they saw with the gun. (Tr. at 3:33; Tr. at 5:36). Several police officers from the Fitchburg Police Department arrived at the scene and observed a man (Lassend) who matched the description provided by the callers exiting an apartment building. (Tr. at 3:61-64). The officers placed Lassend in handcuffs and conducted a pat frisk, recovering an ammunition clip (or magazine) from his pocket. (Tr. at 3:68-70). The officers then searched the common hallway of the apartment building Lassend had just exited and found a firearm underneath a plastic bag in an unlocked closet in the hallway. (Tr. at 3:71-72).

The officers then walked a short distance to Lassend's apartment, where he lived with his girlfriend. (Tr. at 3:76-77). The girlfriend was present at the apartment, and the officers asked for her consent to "search the apartment to check to make sure there's nobody inside that's hurt." (Tr. at 3:78). She consented, and the officers performed a search of the apartment (the basement unit in a multi-apartment building). (*Id.*). The officers encountered a locked door in the kitchen that Lassend's girlfriend helped them open. (Tr. at 3:78-79). The door led into a storage area in the basement, where the officers recovered a holster that appeared to fit the firearm they had just recovered and an additional ammunition clip. (Tr. at 3:79-80).

The officers also conducted a search of Day Street, and recovered a 9mm shell casing, consistent with the ammunition found in the clip recovered from Lassend's pocket. (Tr. 3:109; 4:138). Lassend was searched upon booking at the Fitchburg Police station, and officers

recovered a live 9mm round from his person. (Tr. at 3:183-84). The ammunition clip recovered

from Lassend's pocket and the ammunition clip recovered from his apartment were both found to

fit the firearm officers recovered at the scene. (Tr. 4:81-89).

On September 8, 2010, Lassend was indicted on charges of being a felon in possession of

a firearm and ammunition, both in violation of 18 U.S.C. § 922(g)(1). On October 21, 2011,

after a five-day jury trial, at which Lassend was represented by attorney Raymond O'Hara, he

was convicted on both counts.

### B.      The Pre-Sentence Report and Sentencing

Following Lassend's conviction, the United States Probation Department prepared a pre-

sentence report ("PSR"). According to the PSR, Lassend was "subject to the Armed Career

Criminal provisions at 18 U.S.C. § 924(e) and the guidelines at U.S.S.G. § 4B1.4 as: (1) the

offense of conviction is a violation of 18 U.S.C. § 922(g); and (2) the defendant has at least three

prior convictions for a violent felony or a serious drug offense or both, committed on occasions

different from one another." (PSR ¶ 31). The PSR identified the following prior convictions as

predicate offenses under the Armed Career Criminal statute: (1) a 1992 New York conviction

for "Robbery in the First Degree: Forcible Theft Armed with Deadly Weapon"; (2) a 1997 New

York conviction for "Robbery in the First Degree: Display of What Appears to [be a] firearm";

(3) a 1998 New York conviction for "Assault in the Second Degree"; and (4) a 2010

Massachusetts conviction for "Assault and Battery by Dangerous Weapon, Assault by Dangerous

Weapon." (PSR ¶¶ 38, 39, 40, 43, 48). Based on his status as an Armed Career Criminal,

Probation determined that Lassend's criminal history category was VI and that his guideline

imprisonment range was 235 to 293 months.

On March 2, 2012, the Court sentenced Lassend to a term of imprisonment of 235

months, to be followed by a five-year term of supervised release.

**B.      Procedural Background**

On March 7, 2012, Lassend appealed his convictions to the First Circuit.  The appeal raised three issues:  (1) that the court erred in failing to delay, *sua sponte*, jury empanelment due to a medical condition he had at the time, (2) that the court erred in its jury instructions on police investigation techniques, and (3) that the court erred in precluding him from making use at trial of evidence of a testifying police officer's prior malfeasance.  The appeal was denied, and his convictions affirmed on October 23, 2013.

On October 14, 2014, Lassend filed a motion to vacate his sentence, asserting four grounds for relief:  (1) ineffective assistance of counsel; (2) unlawful search and seizure; (3) defective indictment; and (4) failure of the prosecution to disclose favorable evidence to defendant.

On July 20, 2015, Lassend filed a *pro se* supplemental motion to vacate.  That motion, filed following the Supreme Court's decision in *Johnson II*, contends that he should not have been sentenced under the ACCA because the residual clause was unconstitutional and he did not have three predicate offenses that qualified as violent felonies under the ACCA's "force clause."

Lassend filed a second supplemental motion to vacate on September 21, 2015, adding as a ground for relief that the district court lacked jurisdiction over the charged violations of federal criminal law.

On April 8, 2016, Lassend filed a motion to have counsel appointed to represent him as to his claim for relief under *Johnson II*.  That motion was granted, and Lassend, through counsel, filed a third supplemental motion to vacate on June 21, 2016.  His third supplemental motion focused exclusively on the issue of whether he was properly sentenced under the ACCA in light

of *Johnson II*.

## II.      Analysis

### A.     The Initial Motion to Vacate, Set Aside, or Correct His Sentence

#### 1.     Ineffective Assistance of Counsel Claim

In his initial motion, Lassend contends that his trial counsel rendered ineffective assistance at trial in violation of the Sixth Amendment. In particular, he contends that his counsel rendered ineffective assistance because he (1) never had DNA tests performed upon the firearm, (2) failed to provide all discovery to defendant for his review, (3) failed to have an investigator photograph his home or the common basement in which the holster and magazine were recovered; (4) failed to object on Fourth Amendment grounds to the admission of evidence seized from his home; and (5) failed to object to the admission of the 911 calls or to impeach the credibility of the witnesses who placed those calls.

The standard for determining claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) counsel's performance prejudiced the defense so that there is a "reasonable probability" that the outcome would have been different absent the deficient performance. *Id*. at 687-88, 694-95. Reviewing courts are not required to address the two prongs in that order; if it is possible to dispose of a claim on the grounds that the petitioner did not suffer prejudice, a court does not need to address the reasonability of counsel's performance. *Id.* at 697.

Under *Strickland*, reasonable performance on the part of the attorney is presumed, and the petitioner bears the burden of overcoming that presumption. *See id.* at 689; *Cirilo-Munoz v. United States*, 404 F.3d 527, 530 (1st Cir. 2005). Furthermore, "judicial scrutiny of counsel's

performance must be highly deferential." *Strickland*, 466 U.S. at 689. If an attorney's choices

or courses of action can reasonably be characterized as trial strategy and were "made after

thorough investigation of law and facts relevant to plausible options," those decisions "are

virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690; *Sleeper v. Spencer*, 510 F.3d 32, 38

(1st Cir. 2007) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)) (stating that counsel "has

'wide latitude in deciding how best to represent a client'").

Even if a petitioner can show that the attorney's performance was objectively

unreasonable, he or she must also show prejudice. To do so, a petitioner must show that there is

a "probability sufficient to undermine confidence in the outcome" that if it were not for counsel's

deficient performance, the petitioner would have obtained a more favorable result. *Strickland*,

466 U.S. at 694.

### a.      Failure to Conduct DNA Testing

Lassend's claim that counsel's failure to request DNA testing of the firearm seized at the

scene of his arrest fails both prongs of the *Strickland* test. First, it appears quite clear from the

record that counsel's failure to request DNA testing was the result of sound trial strategy rather

than any oversight or deficiency in representation. Faced with substantial evidence against

Lassend—including eyewitness testimony, the ammunition clip and ammunition recovered from

his person, and the ammunition clip and holster recovered from the storage area of his

apartment—it appears that counsel did not request DNA testing so that its absence could be used

in an attempt to undermine the weight and credibility of the government's evidence. (*See* Tr.

3:26, 5:105-10 (arguing about absence of DNA evidence)). The attorney's strategic decision fell

comfortably within the range of reasonable conduct. *See Strickland*, 466 U.S. at 690 (noting that

decisions that can reasonably be characterized as trial strategy are "virtually unchallengeable").

Second, Lassend has failed to establish that, in light of all of the other evidence against him presented at trial, DNA testing of the seized firearm would have changed the outcome of the trial.

### b.      Failure to Provide Discovery

Lassend's claim that counsel's performance was deficient because he failed to provide him with the evidence against him also fails under *Strickland*.  He contends that counsel failed to provide him with certain photographs taken of the firearm, ammunition clips, and ammunition taken by witnesses Kelley King (a chemist) and Emily Labrecque (a trooper).  It appears that counsel shared with Lassend black-and-white photocopies of photographs of all of the evidence in the case, but may not have shared color copies of all photographs taken of the evidence in the state crime laboratory.  (*See* Tr. 5:11-12).

Even assuming that Lassend could establish that counsel's failure to provide color copies of all photographs taken in the crime laboratory was somehow unreasonable, he has failed to establish any resulting prejudice.  He does not articulate how his ability to review all of the photographs—which depicted the firearm, ammunition clips, ammunition, and holster that were themselves entered into evidence—would have changed the outcome of the trial.

### c.      Failure to Have an Investigator Photograph Lassend's Apartment

Lassend has also failed to establish that counsel's failure to have an investigator photograph his apartment was either objectively unreasonable or prejudicial.  he contends that his counsel should have had an investigator photograph his apartment, and, in particular, the basement storage area form which the ammunition clip and holster were recovered, in order to show that the storage area was a common area that could be accessed from entrances other than through his apartment.

As with the lack of DNA testing, it appears that the failure to take photographs of the basement storage area was a strategic decision. Detective Sergeant Martineau was one of the officers who responded to the scene of Lassend's arrest. During his cross-examination of Martineau, defense counsel highlighted the fact that he had taken many photographs of the apartment building from which the firearm was recovered and the evidence that was recovered from the apartment, but none of the interior of the apartment or of the basement storage area. (Tr. 3:186-87). Thus, it appears that the absence of photographs of the basement area was a reasonable, strategic decision made in an attempt to weaken the weight and credibility of the government's evidence.

Furthermore, even if Lassend could establish that the failure to photograph the basement area was unreasonable, he has not established any resulting prejudice. Detective Sergeant Martineau himself testified that the basement storage area appeared to be a common area. (Tr. 3:172). On cross-examination, defense counsel clarified and emphasized that "common area" means an area of the building that is shared by all units in the apartment building. (Tr. 3:187). In light of that testimony, it is unclear how the addition of photographs of the basement area would have changed the outcome of the case. Finally, even if such photographs might have caused the jury to disregard the evidence seized from the basement, there was still substantial evidence—including eyewitness testimony as well as the ammunition clip and ammunition recovered from Lassend's person and the firearm recovered nearby—on which the jury could have relied in finding him guilty.

> **d.** **Failure to Object to Admission of Evidence Recovered from Lassend's Apartment on Fourth Amendment Grounds**

It appears that Lassend also challenges the effectiveness of his counsel's performance based on his failure to object, on Fourth Amendment grounds, to the admission of the evidence

seized from his apartment. He contends that the seizure of the holster and ammunition clip from the basement storage area was constitutionally improper because it exceeded the scope of the consent given for the search. He further contends that he requested that defense counsel object to the admission of that evidence, and that his failure to object was unreasonable.

"When defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, [in addition to the objective unreasonableness of counsel's performance,] the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, Lassend has not established any of the required elements of such a claim.

First, Lassend has failed to establish that his Fourth Amendment claim is meritorious. Under the "plain view" doctrine, a seizure is legitimate if: (1) "the initial intrusion that brings the police within plain view of [the seized] article is supported [by either a warrant or] one of the recognized exceptions to the warrant requirement;" (2) the incriminating nature of the seized object was "immediately apparent;" and (3) the officer who seized the object had "a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 135-37 (1990). Here, the officers' initial intrusion, as well as their access to the seized objects, was supported by the consent of Lassend's girlfriend, who had the apparent authority to consent to the search. (Tr. 3:78). Furthermore, the incriminating nature of the holster and ammunition clip was immediately apparent in light of the facts surrounding the arrest.

Furthermore, Lassend has failed to establish that counsel's performance was rendered ineffective due to his failure to object to the admission of the holster and ammunition clip or that

his failure caused any prejudice. *See Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990) ("Trial counsel was under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel."); *United States v. Victoria*, 876 F.2d 1009, 1013 (1st Cir. 1989) ("Since raising meritless points would not have affected the outcome of the trial, counsel's failure to raise them did not constitute 'ineffective assistance.'").

e.      <u>Failure to Suppress 911 Calls and/or Impeach Witnesses</u>

It appears that Lassend also contends that counsel's assistance was ineffective due to his failure to seek suppression of the 911 calls or to impeach the credibility of the two witnesses who placed those calls.

The admissibility of the 911 calls was the subject of a motion *in limine* filed by the government. The government sought to admit the calls as either excited utterances or present-sense impressions. The court admitted them on that basis. Lassend contends that counsel should have requested an evidentiary hearing in connection with a motion to suppress the calls. However, in light of the clear precedent establishing the admissibility of 911 calls, *see, e.g., United States v. Shoup*, 476 F.3d 38, 41-42 (1st Cir. 2007), *United States v. Brito*, 427 F.3d 53, 62-63 (1st Cir. 2005), the decision not to request an evidentiary hearing can reasonably be characterized as matter of sound trial strategy and is therefore not objectively unreasonable. Furthermore, in light of the other evidence presented at trial, Lassend has failed to show that the admission of the 911 calls caused any prejudice.

Counsel's alleged failure to impeach the callers likewise did not constitute ineffective assistance. When a petitioner asserts that counsel failed to challenge the credibility of a government witness, the First Circuit considers three factors: "first, the strength of the prosecution's case; second, the effectiveness of the defense that was presented at trial; [and]

third, the potential value of . . . new avenues for cross-examination in undermining the credibility of the government witnesses' testimony." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (internal quotation marks omitted). As to the first factor, the case against Lassend was quite strong, even without the calls. As to the second factor, defense counsel did in fact impeach the credibility of the eyewitness reports. At trial, he called to the jury's attention to inconsistencies in statements made by both eyewitnesses. (*See, e.g.,* Tr. 3:89-91, 121; Tr. 5:54). As to the final factor, Lassend has not identified any new avenues from cross-examination, nor does it appear from the trial transcripts that any additional avenues of impeachment were available.

### 2.    Lassend's Other Claims

The second claim raised in Lassend's initial motion to vacate is that evidence used against him was acquired as a result of an unlawful search and seizure. He contends that his girlfriend gave the police permission to search his apartment solely on the condition that they were checking to see if anyone in the apartment was harmed. He further contends that her consent was inadequate because she did not live in the apartment.

The third claim raised in the initial motion is that the indictment was defective. Lassend appears to object to the fact that the ACCA was deemed applicable to him despite the fact that "Felon in Possession of Firearm/Ammunition" is itself a non-violent offense. He also appears to object, for the same reason, to the government's argument at sentencing, which referred to the "violent nature" of the offense.

The fourth claim raised in the initial motion is that the prosecution unlawfully withheld potentially exculpatory evidence. Lassend contends that the prosecution possessed several proffer notes and statements of key witnesses that could have impeached their testimony. He

contends that the prosecution unlawfully kept this information from the defendant and that he was unable to "push for dismissal" as a result.

Those three claims have been procedurally defaulted because Lassend failed to raise the claims either at trial or on direct appeal.[1] "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff v. United States*, 308 F.3d 124, 127-28 (1st Cir. 2002) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). In this context, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623.

Lassend offers no argument regarding the cause for his default. While he contends, in conclusory fashion, that he is innocent of the crimes for which he was convicted, he has not put forth any "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). *See also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1936 (2013) (stressing that "the *Schlup* standard is demanding"). Therefore, Lassend cannot now raise his defaulted claims.

**B.** **Lassend's First and Third Supplemental Motions**

Lassend's first and third supplemental motions contend that he should not have been sentenced as an armed career criminal.[2] Specifically, he contends that his sentencing under the residual clause of the ACCA was unconstitutional following *Johnson II*, and that he could not

---

[1] To the extent Lassend contends that his sentencing under the ACCA is improper following *Johnson II*, that argument is addressed below in connection with his first and third supplemental motions.

[2] Lassend's first supplemental motion was prepared *pro se*, while his third supplemental motion was prepared with the assistance of counsel.

otherwise have been sentenced as an armed career criminal, because he did not have three predicate offenses that qualify as violent felonies under either the "force clause" or "enumerated offenses clause." The government contends that Lassend has procedurally defaulted his *Johnson* claims or, in the alternative, that his sentencing under the ACCA remains appropriate under the "force clause" because he has three qualifying predicate offenses.

### 1.    Whether Lassend Has Procedurally Defaulted

Lassend's *Johnson* claim has been procedurally defaulted. Although he raised the claim in trial court at sentencing (*see* PSR at 22; Sentencing Tr. at 8), he failed to raise the claim on direct appeal. *See Bucci v. United States*, 662 F.3d 18, 29 & n.10 (1st Cir. 2011) (clarifying that claims are procedurally defaulted unless raised at both trial and on direct appeal). However, Lassend contends that he has shown both cause and prejudice to excuse his default. The Court agrees.

### a.    Cause

To show cause, a petitioner must demonstrate that "some objective factor external to the defense" prevented him from raising a constitutional claim. *Murray,* 477 U.S. at 488. The Supreme Court has held that a finding of cause is warranted where the petitioner shows that, at the time of the direct appeal, "the factual or legal basis for a claim was not reasonably available to counsel." *Id.* (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984)). To show that there was no legal basis for the defaulted claim at the time of the direct appeal, it is not sufficient for a petitioner to show merely that the claim likely would have been futile based on then-existing precedent. *See Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982). Rather, a petitioner seeking relief based on a change in the law must show that the "constitutional claim is so novel that its legal basis [was] not reasonably available to counsel." *Reed*, 468 U.S. at 16. A claim is sufficiently novel to

warrant a finding of cause if it is based on a Supreme Court opinion that (1) "explicitly overrule[s]" prior Supreme Court precedent; (2) overturns "a longstanding and widespread practice to which [the Supreme Court] ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved"; or (3) "disapprove[s] a practice [the Supreme Court] arguably ha[d] sanctioned in prior cases." *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 558 (1982)).

The government contends that Lassend cannot establish that his *Johnson* claim was sufficiently novel because his trial counsel argued at sentencing that the residual clause of the ACCA was void for vagueness. However, the relevant standard is not whether a claim has ever been raised before, but whether "the factual or legal basis for a claim was not reasonably available to counsel." *Murray*, 477 U.S. at 488. Put differently, the issue is whether "there was no reasonable basis in existing law" for the claim. *Reed*, 468 U.S. at 15.

Lassend contends that he has established cause under prong one of the *Reed* test, as *Johnson II* explicitly overruled prior Supreme Court precedent. In April 2007, the Supreme Court decided *James v. United States*, upholding an offender's sentence under the residual clause of the ACCA. 550 U.S. 192, 214 (2007) *overruled by Johnson II*, 135 S. Ct. 2551 (2015). Justice Scalia dissented from the Court's opinion, suggesting that the residual clause was void for vagueness. *Id.* at 216-17. The majority explicitly rejected that contention, stating, "we are not persuaded . . . that the residual provision is unconstitutionally vague." *Id.* at 210 n.6. That holding was reaffirmed four years later in *Sykes*, with Justice Scalia again in dissent. *See Sykes v. United States*, 564 U.S. 1, 16, 28 (2011) *overruled by Johnson II*, 135 S. Ct. 2551 (2015). Then, in June 2015, the Supreme Court decided *Johnson II*—this time with Justice Scalia writing for the majority—holding that the residual clause was unconstitutionally vague and that the

court's "contrary holdings in *James* and *Sykes* are overruled." *Johnson II*, 135 S. Ct. at 2563.

*James* and *Sykes* were controlling Supreme Court precedent at the time of Lassend's sentencing and his direct appeal. Furthermore, Lassend's appeal was filed, argued, and decided before the Supreme Court had even granted *certiorari* in *Johnson II*. Therefore, his *Johnson* claim was not reasonably available at the time of his appeal, and he has established cause for his failure to raise the claim on direct appeal.

### b. Prejudice

To be excused from a procedural default, a habeas petitioner must also show "actual prejudice." *See United States v. Frady*, 456 U.S. at 167. To demonstrate actual prejudice, the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Id.* at 170.

Here, the prejudice argument merges with the argument on the merits. If Lassend shows that he would not qualify as an armed career criminal after *Johnson II*, his failure to raise that claim obviously resulted in prejudice. Therefore, the Court will proceed to the merits to determine whether he qualifies as an armed career criminal.

### 2. Whether Lassend Qualifies as an Armed Career Criminal

### a. The Armed Career Criminal Act

Federal law makes it a crime for a convicted felon to possess a firearm or ammunition. *See* 18 U.S.C. § 922(g)(1). That statute generally carries a maximum penalty of a term of imprisonment of ten years. *See id.* § 924(a)(2). However, under the ACCA, a defendant is subject to a much longer prison term if he has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* § 924(e). Qualifying defendants are subject to a mandatory minimum term of imprisonment of

fifteen years.  *See id.*

At the time of Lassend's sentencing, a "violent felony" was defined as a conviction that carried a maximum term of imprisonment exceeding one year, and that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, [or] involves use of explosives"; or (3) "otherwise . . . presents a serious potential risk of physical injury to another."  *Id.* § 924(e)(2)(B); *see also Johnson II*, 135 S. Ct. at 2555–56.  Those provisions are commonly referred to as the "force clause," the "enumerated offenses clause," and the "residual clause," respectively.

In *Johnson II*, the Supreme Court held that the residual clause was unconstitutionally vague.  *Johnson II*, 135 S. Ct. at 2563.  The following year, in *Welch*, the Court found that *Johnson II* applied retroactively on collateral review.  *Welch*, 136 S. Ct. at 1268.  Accordingly, to be lawful, an enhanced sentence under the ACCA must be based on predicate offenses that qualify as "violent felonies" under either the enumerated offenses clause or force clause of 18 U.S.C. § 924(e)(2)(B).

Under the force clause, the term "physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*") (emphasis in original).  The question is not whether the defendant actually committed multiple violent crimes.  Rather, the question is whether, as a legal matter, the offenses for which he was convicted qualify as "violent" felonies under the strict requirements of the ACCA.  His actual conduct "is of no relevance" under that inquiry.  *United States v. Serrano-Mercado*, 784 F.3d 838, 843 (1st Cir. 2015).

### b.  Standard of Review

A court must undertake a three-step analysis to determine whether a predicate offense, as

the law defined it at the time of the conviction, qualifies as "violent" under the ACCA. *See United States v. Faust*, 853 F.3d 39, 51–52 (1st Cir. 2017) (citing *McNeill v. United State*s, 563 U.S. 816, 820 (2011)).

At step one, the court must take a "categorical" approach to determine whether the offense of conviction encompasses non-violent forms of committing the crime. Courts must look at the offense in the abstract, considering the elements of the crime, rather than the particular defendant's underlying conduct. *Taylor v. United States*, 495 U.S. 575, 602 (1990). Under that approach, "the first question a sentencing court must answer . . . is whether all of the conduct covered by the statute categorically requires violent force." *Faust,* 853 F.3d at 51. If so, "then a conviction under the statute will always count as a predicate under the ACCA." *Id.* If not, then the court proceeds to step two. *Id.*

At step two, the court may determine whether the offense is "divisible." *Id.* An offense may set out only a single set of elements to define a single crime—constituting an "indivisible" offense—or it may "list elements in the alternative, and thereby define multiple crimes"—constituting a "divisible" offense. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). An offense is divisible if it provides multiple *elementally* distinct forms of commission, but not if it merely "enumerates various *factual means* of committing a single element." *Id.*; *see also United States v. Fish*, 758 F.3d 1, 5 (1st Cir. 2014). In determining whether an alternative form of commission presents different elements or means, the touchstone inquiry is whether the elements must be proved beyond a reasonable doubt to a jury. *Mathis*, 136 S. Ct. at 2257; *see also United States v. Tavares*, 843 F.3d 1, 15 (1st Cir. 2016), *reh'g denied*, 849 F.3d 529 (1st Cir. 2017). If an offense of conviction encompasses at least one non-violent form of commission and is indivisible, it cannot serve as an ACCA predicate under the force clause. If it is divisible, the

court proceeds to step three and applies what is called the "modified categorical approach." *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

At step three, the court may look to a limited class of documents approved under *Shepard v. United States,* 544 U.S. 13 (2005), to determine "what crime, with what elements, a defendant was convicted of." *Mathis,* 136 S. Ct. at 2249. So-called *Shepard* documents include "the statutory definition, charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. Again, the court undertakes that inquiry not to determine the actual conduct in which the petitioner engaged. *Serrano-Mercado*, 784 F.3d at 843. Instead, it does so to "identify (if such identification is possible) the actual offense of conviction from among the distinct offenses set forth in a divisible statute." *Id.*

There is no First Circuit precedent as to who bears the burden to produce *Shepard* documents on collateral review. *Cf. Faust,* 853 F.3d at 60 (finding on direct appeal that if "it is unclear" which form of a divisible predicate offense the petitioner committed, that conviction "cannot be used as a predicate under the ACCA"); *see also Tavares*, 843 F.3d at 20 (remanding after direct appeal to "allow the government the opportunity to put forth *Shepard* documents" in order to determine whether defendant's conviction was for the violent form of a divisible offense). In many cases, no such documents exist, and therefore the question of who bears the burden of proof will effectively determine the result.

Generally, a habeas petitioner bears the burden to prove that his sentence "was imposed in violation of the Constitution or laws of the United States." *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (quoting 28 U.S.C. § 2255(a)). That principle is in some tension with the rule that at sentencing and on appeal the government bears the burden of establishing that "a

prior conviction qualifies as a predicate offense for sentencing enhancement purposes." *United States v. Davila-Felix*, 667 F.3d 47, 55 (1st Cir. 2011). The Seventh Circuit has resolved the issue by holding that the government retains the burden to produce *Shepard* documents on collateral review. *Kirkland v. United States,* 687 F.3d 878, 889 (7th Cir. 2012). Perhaps a better way to reconcile the conflict is to arrive at the same result through a different avenue: to conclude that the petitioner bears the burden to establish that his prior conviction is presumptively unlawful at steps one and two, and, upon such a showing, the burden shifts to the government to produce *Shepard* documents at step three. Applying that framework, if the government fails to produce *Shepard* documents that "ma[ke] plain" which form of a divisible offense is the offense of conviction, that offense "cannot be used as a predicate under the ACCA." *Faust,* 853 F.3d at 60.

Here, Lassend contends that none of his five prior convictions qualify as predicate offenses under either the force clause or the enumerated offenses clause.[3] If he demonstrates that three of those convictions were not "violent felonies," the ACCA does not apply.

### c.       2010 Massachusetts Conviction for Assault with a Dangerous Weapon

On April 29, 2010, Lassend was convicted of assault with a dangerous weapon ("ADW") in violation of Mass. Gen. Laws ch. 265 § 15B. That crime qualifies as a violent felony under the force clause. In *United States v. Am*, 564 F.3d 25 (1st Cir. 2009), the First Circuit held that "[b]y its terms, [Massachusetts ADW], which criminalizes 'an assault upon another' by 'means of a dangerous weapon,' 'has as an element the use, attempted use, or threatened use of physical force' as required by ACCA." *Id.* at 33 (citations omitted). In so holding, the First Circuit relied

---

[3] While Lassend contends that his Massachusetts conviction for assault with a dangerous weapon does not constitute a violent felony, he recognizes that the First Circuit has recently held that it does. *See, e.g., United States v. Hudson*, 823 F.3d 11 (1st Cir. 2016).

on Massachusetts case law requiring that, in order to convict a defendant of ADW, the state must either attempt to use or immediately threaten to use physical force by means of a dangerous weapon. *Id.* (citing *Commonwealth v. Melton*, 436 Mass. 291, 295 (2002); *Commonwealth v. Gorassi*, 432 Mass. 244, 248 (2000)). In *United States v. Whindleton*, 797 F.3d 105 (1st Cir. 2015), the First Circuit clarified that, even though assault itself may be "accomplished by mere touching" and therefore does not qualify as a violent felony, ADW is a violent felony "by means virtue of the additional dangerous-weapon element." *Id.* at 113-15. Finally, in *United States v. Hudson*, 823 F.3d 11 (1st Cir. 2016), the First Circuit addressed whether Massachusetts ADW satisfies the mens rea requirement of the ACCA. *Id.* at 16-17. Relying on Massachusetts case law requiring proof of specific intent, the First Circuit held that ADW "includes a mens rea requirement sufficient to qualify the conviction as a predicate under the ACCA's force clause." *Id.* at 17. Accordingly, Lassend's 2010 Massachusetts ADW conviction constitutes a violent felony and a predicate conviction under the ACCA.

### d. 1998 New York Conviction for Attempted Assault in the Second Degree

On January 13, 1998, Lassend was convicted of attempted assault in the second degree in violation of N.Y. P.L. § 120.05. Section 120.05 of the New York Penal Law includes approximately twenty subsections defining different elements in the alternative. The statute criminalizes, among other things, recklessly causing injury by means of a deadly weapon or dangerous instrument, as well as causing injury to various public employees with the intent to prevent those employees from fulfilling their duties. Because the statute encompasses conduct that recklessly causes injury, it does not, as a categorical matter, qualify as a violent felony under the ACCA. *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006). The Court must therefore proceed to the second step.

Section 120.05 enumerates different elements in the alternative, thereby defining multiple crimes. It is therefore divisible. *See Mathis*, 136 S. Ct. at 2249. *See also United States v. Walker*, 442 F.3d 787, 788-89 (2d Cir. 2006) (applying modified categorical approach to N.Y. P.L. § 120.05). The Court will therefore proceed to step three.

The government has produced the relevant indictment and a transcript of the plea colloquy that, together, show that Lassend was convicted under subsection seven of the statute. According to the plea colloquy, he pleaded guilty to the second count of the indictment. (Docket No. 183-1 at 3). The second count of the indictment charged as follows:

> The defendant, Kirk Lassend, on or about March 27, 1997, in the County of the Bronx, with intent to cause physical injury to another person . . . did cause such injury to [that person], where at the time of the commission of the act, the defendant was confined in a correctional facility pursuant to having been charged with or convicted of a crime.

(Docket No. 182-1 at 4). While the indictment does not provide a statutory citation for the offenses charged, and therefore does not expressly indicate the subsection of the statute under which Lassend was charged (and ultimately convicted), the cited language from the indictment mirrors the language of § 120.05(7), which states as follows:

> Having been charged with or convicted of a crime and while confined in a correctional facility . . . with intent to cause physical injury to another person, he causes such injury to such person or to a third person.

N.Y. P.L § 120.05(7). That is sufficient to establish the precise offense for which Lassend was convicted.

Section 120.05(7) requires that a defendant both "inten[ds] to cause physical injury to another person" and that he actually "causes such injury." N.Y. P.L. § 120.05(7). It therefore has, as an element, the use of "violent force," meaning "force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. Section 120.05(7) of the New York Penal

Law therefore constitutes a violent felony under the ACCA.

*Lassend* points to *United States v. Poindexter*, 2016 WL 6595919 (E.D. Va. Nov. 7, 2016), which reached a contrary conclusion. In *Poindexter*, the district court concluded, in *dicta*, that subsection one of Section 120.05—which, like subsection seven, states that a person is guilty of second-degree assault when "[w]ith intent to cause serious physical injury to another person, he causes such injury"—does not constitute a violent felony under the ACCA. The court relied on, and quoted, the opinion of the Fourth Circuit in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012) *abrogation recognized in In re Irby*, -- F.3d --, 2017 WL 2366996 (4th Cir. June 1, 2017). It reasoned, based on that opinion, that "requiring only intent and result does not satisfy the force clause because 'a crime may *result* in . . . serious injury without involving the *use* of physical force.'" *Id.* at *4 (quoting *Torres-Miguel*, 701 F.3d at 168).

In *Torres-Miguel*, the Fourth Circuit had distinguished between crimes that involve the *use* of physical force—as is required under the force clause of the ACCA—and those that "may *result* in death or serious injury without involving the *use* of physical force." 701 F.3d at 168. The court gave as an example the use of poison, which may cause physical injury without the use of physical force. *Id.* at 169.

However, the Fourth Circuit recently recognized that "the distinction [it] drew in *Torres-Miguel* between indirect and direct applications of force and [the] conclusion that poison 'involves no use or threatened use of force,' no longer remains valid in light of [the] explicit rejection [by the Supreme Court in *United States v. Castleman*, 134 S. Ct. 1405 (2014)] of such a distinction." *In re Irby*, 2017 WL 2366996, at *6. In *Castleman*, the Supreme Court interpreted the meaning of the phrase "physical force" in the context of 18 U.S.C. § 922(g)(9). That statute forbids the possession of firearms by anyone convicted of a "misdemeanor crime of domestic

violence," defined to include an offense that "has, as an element, the use or attempted use of physical force." 134 S. Ct. at 1408-09 (quoting 18 U.S.C. §§ 922(g)(9), 921(a)(33)(A)). Specifically, the Supreme Court addressed whether "'intentionally or knowingly caus[ing] harm to' the mother of [the defendant's] child" constituted such an offense. *Id.* at 1408. The court first held that, in that context—unlike in the context of the ACCA, where "physical force" is used to define a "violent felony"—the term "physical force" "incorporated the common-law meaning of 'force'—namely, offensive touching." *Id.* at 1410. That distinguishes *Castleman* from this case. However, the court in *Castleman* went on to hold that the offense at issue categorically had, as an element, the use of physical force. *Id.* at 1413. Although the operative definition of "physical force" was different, the court's reasoning is relevant here. The court rejected the argument that "causing harm" can be accomplished without the use of "physical force"—for example, by deceiving someone into taking poison. *Id.* In part, the court reasoned that "the common-law concept of 'force' encompasses even its indirect application," such as through the administration of poison. *Id.* But the court also rejected the argument that causing harm by administering poison does not constitute "physical force" because "no one would say that a poisoner 'employs' force . . . when he or she sprinkles poison in a victim's drink." *Id.* at 1415. The court reasoned that the relevant "use of force" is "not the act of 'sprinkl[ing] the poison; it is the act of employing poison knowingly as a device to cause physical harm." *Id.* Thus, whether an injury is caused by means of a punch, a gunshot, or poison, it still involves the *use* of physical force.

While *Castleman* establishes that even indirect means of causing injury constitute the *use* of force, there remains the question of whether such an indirect means of causing injury—such as the administration of poison—constitutes *violent* force as required under the ACCA. In

*Johnson I*, the Supreme Court interpreted "physical force" as used in the ACCA to mean "*violent force, that is, force capable of causing physical pain or injury to another person.*"  559 U.S. at 140.  Logic thus dictates that causing injury, even by means of poison, constitutes violent force as required under the ACCA.  If violent force is force capable of causing physical pain or injury, it must be that any force that did in fact cause injury was capable of causing injury.  Accordingly, the *Poindexter* decision is not persuasive, and this Court declines to follow it.

Finally, Lassend contends that his conviction cannot categorically constitute a violent felony because he was convicted for *attempted* assault in the second degree.  According to Lassend, "[i]f a defendant is convicted of an attempted assault, categorically there can be no assurance that violent physical force was actually employed."  (Pet. Reply at 3).  However, by its very terms, the force clause applies to crimes that have "as an element the use, *attempted use*, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  Under New York law, a person is guilty of an attempted crime "when, with the intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  N.Y. P.L. § 110.00.  Intending to commit a crime that itself requires both the intent to cause physical harm and that physical harm actually result, *and* engaging in conduct which tends to effect the commission of that crime—which is to say, engaging in conduct which tends to effect the infliction of physical harm upon another—constitutes the attempted use of violent force.  *Cf. United States v. Mitchell*, 653 Fed. Appx. 639, 645 (10th Cir. 2016) (holding that assault by means of attempted battery with a dangerous weapon constitutes the attempted use of force).

In summary, Lassend's conviction under N.Y. P.L § 120.05(7) qualifies as a conviction for a crime of violence, and is therefore a predicate offense under the ACCA.

e.       **1997 New York Conviction for Robbery in the First Degree**

On July 23, 1997, Lassend was convicted of robbery in the first degree in violation of

New York Penal Law § 160.15.  That statute provides as follows:

> A person is guilty of robbery in the first degree when he forcibly steals property
> and when, in the course of the commission of the crime or of immediate flight
> therefore, he or another participant in the crime:  (1) Causes serious physical injury
> to any person who is not a participant in the crime; or (2) Is armed with a deadly
> weapon; or (3) Uses or threatens the immediate use of a dangerous instrument; or
> (4) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or
> other firearm . . . .

N.Y. P.L. § 160.15.   A person "forcibly steals" property when

> he uses or threatens the immediate use of physical force upon another person for
> the purpose of:   (1) preventing or overcoming resistance to the taking of the
> property or to the retention thereof immediately after the taking; or (2) Compelling
> the owner of such property or another person to deliver up the property or to engage
> in other conduct which aids in the commission of the larceny."

*Id.* § 160.00.

The offenses set forth in the statute do not categorically qualify as crimes of violence.  As

the First Circuit recently held in *United States v. Starks*, -- F.3d --, 2017 WL 2802755 (1st Cir.

June 28, 2017), armed robbery committed with *de minimis* force does not qualify as a violent

felony under the ACCA if the defendant is armed with, but does not use or display, a dangerous

weapon.  *Starks*, 2017 WL 2802755, at *11-13 (analyzing substantially similar Massachusetts

armed robbery statute).  Section 160.15 thus does not categorically constitute a violent felony

under the ACCA.  However, the statute is divisible, as it lists elements in the alternative, defining

multiple crimes.  The Court will therefore proceed to step three.

The government has produced a document titled "Certificate of Disposition Indictment,"

indicating that Lassend was convicted of "Robbery 1st Degree PL 160.15 04 BF."  (Gov. Opp.

Ex. 2 at 2).  "In New York, a Certificate of Disposition is a judicial record of the offense of

which a defendant has been convicted." *United States v. Green*, 480 F.3d 627, 632 (2d Cir. 2007). Under New York law, such certificates "constitute[] presumptive evidence of the facts stated" in the certificate. N.Y. Crim. Pro. Law § 60.60(1). Certificates of Disposition are regularly considered by New York Courts when deciding whether sentencing enhancements based on prior convictions should be applied, and they are "the type of judicial record that the *Shepard* Court indicated a federal district court may consider in an effort to determine the nature of the New York offense to which a federal defendant has previously pleaded guilty." *Green*, 480 F.3d at 633. However, Certificates of Disposition are not necessarily conclusive evidence of the specific subsection of a statute under which a defendant was convicted. "[W]hen the accuracy of the Certificate of Disposition is 'seriously' questioned, the district court should consider 'easily produced court documents, such as a plea colloquy,' in order to determine whether a given Certificate of Disposition is accurate." *Id.* (quoting *United States v. Hernandez*, 218 F.3d 272, 279 (3d. Cir. 2000)).

Here, the accuracy of the Certificate of Disposition has not been "seriously" questioned. Lassend contends that "the Government has offered no evidence besides the certified copy of the conviction and thus has failed to meet its burden to show that Mr. Lassend admitted to having used violent force." (Pl. Reply at 12). However, he offers no reason why the certificate is insufficient to establish that he was convicted under subsection four of § 160.15, nor does he offer any contradictory evidence. *Cf. Hernandez*, 218 F.3d at 279 (holding that defendant "is entitled to rely on certain easily produced court documents, such as a plea colloquy, in order to establish that he was not convicted of a statute qualifying as a predicate offense" and vacating sentence where district court judge refused to consider plea colloquy offered by defendant). The

Court therefore concludes that Lassend was convicted of subsection four of N.Y. P.L. § 160.15.[4]

In addition to the general element that a defendant "forcibly steals property," subsection four adds, as an additional element, that "in the course of the commission of the crime or of immediate flight therefore, he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." N.Y. P.L. § 160.15(4). Thus, there are two separate elements of the offense that could potentially satisfy the requirements of the force clause: (1) forcibly stealing property and (2) displaying what appears to be a firearm.

### (1)     Forcibly Stealing Property

Under New York Law, the "forcibly stealing" element can be satisfied by minimal force and therefore does not satisfy the requirements of the force clause. New York courts have held that the "force" requirement of § 160.15 can be satisfied by bumping the victim, blocking the

---

[4] Lassend's reliance on *United States v. Rosa*, 507 F.3d 142 (2d Cir. 2007) is misplaced. In *Rosa*, the district court had relied upon various documents to conclude that a prior conviction for robbery in the first degree— committed when the defendant was 15—constituted a violent felony under the ACCA. Under the ACCA, in order for juvenile offenses to constitute predicate convictions, they must not only satisfy the requirements of either the force clause or the enumerated offenses clause, they must also "involve the use or carrying of a firearm, knife, or destructive device." 18 U.S.C. § 924(e)(2)(B). During the plea colloquy, the defendant had admitted that he aided and abetted others who forcibly stole property while displaying what appeared to be a firearm, but denied that he ever carried a gun. *Id.* at 147. The district court relied upon the bill of particulars filed by the government in support of the indictment (which indicated that a firearm had been used) as well the PSR and sentencing transcript (in which, according to the government, Rosa implicitly assented to its statements suggesting that a firearm had been used in the robbery) in concluding that a firearm had in fact been used and that the juvenile offense therefore constituted a violent felony under the ACCA. The Second Circuit held that reliance on those documents was improper under *Shephard*. *Id.* at 154-59. In applying the ACCA, the district court had also relied upon the logical inference that Rosa must have necessarily conceded that the weapon was a firearm by pleading guilty to robbery in the *first* degree, because by so doing he waived the affirmative defense, available under New York law, that would reduce robbery in the first degree to robbery in the *second* degree if the firearm used "'was not a loaded weapon from which a shot . . . could be discharged.'" *Id.* at 160 (quoting N.Y. P.L. § 160.15(4)). The Second Circuit rejected that argument, too, concluding that by pleading guilty to robbery in the first degree, Rosa only *necessarily* admitted to facts sufficient for a conviction of robbery in the first degree, which requires the display of something that appears to be a firearm but does not itself require that an actual firearm be used. *Id.* Thus, in determining that the offense involved the use of an actual firearm, the district court engaged in fact-finding that went beyond the facts compelled by the state record of conviction. *Id.* at 161. Here, however, the certificate of disposition compels the conclusion that Lassend pleaded guilty to § 160.15(4). For present purposes, and unlike in *Rosa*, the Court need not go any further than that, and need not determine whether the object displayed actually was a firearm, in order to conclude that the conviction constitutes a violent felony under the ACCA.

victim's passage, or engaging in a brief tug-of-war. *See United States v. Moncrieffe*, 167 F.

Supp. 3d 383, 403 (E.D.N.Y. 2016) (collecting cases). For example, in *People v. Bennett*, 219

A.D. 2d 570 (Sup. Ct. N.Y. 1995), the court held that the force requirement was satisfied where

the defendant and three others "formed a human wall that blocked the victim's path as the victim

attempted to pursue someone who had picked his pocket." *Id.* at 570. The court stated that

"[t]he requirement that a robbery involve the use, or the treat of immediate use, of physical force

. . . does not mean that a weapon must be used or displayed or that the victim must be physically

injured or touched." *Id.* (internal citations omitted). The force required under § 160.15 itself

therefore does not categorically require "violent" force, and for that reason does not satisfy the

requirements of the force clause of the ACCA. *See Johnson I*, 559 U.S. at 140; *Castleman*, 134

S. Ct. at 1412.

### (2) <u>Displaying What Appears to be a Firearm</u>

The additional element of subsection four—that the defendant "or another participant in

the crime . . . [d]isplays what appears to be a . . . firearm" does, however, categorically require

"violent" force as required under the force clause. Under New York law, that element requires

that the defendant (or another participant in the crime) "consciously display something that could

reasonably be perceived as a firearm with the intent of compelling an owner of property to

deliver it up or for the purpose of preventing or overcoming resistance to the taking." *People v.

Baskerville*, 457 N.E.2d 752, 756 (Ct. App. N.Y. 1983). Furthermore, "the display must actually

be witnessed in some manner by the victim, i.e., it must appear to the victim by sight, touch or

sound that he is threatened by a firearm." *Id.* However, the item used need not closely resemble

a gun, nor must it actually be dangerous; "A towel wrapped around a black object . . . a

toothbrush held in a pocket . . . or even a hand consciously concealed in clothing may suffice . . .

if under all of the circumstances the defendant's conduct could reasonably lead the victim to believe that a gun is being used during the robbery." *People v. Lopez*, 535 N.E.2d 1328, 1331 (Ct. App. N.Y. 1989) (internal citations omitted).

The First Circuit has recognized repeatedly that the presence of a firearm can elevate force that would otherwise be insufficient under the force clause—such as simple assault involving the threat of harmful or offensive touching—into violent force. *See Whindleton*, 707 F.3d at 113-14 (holding that Massachusetts assault with a deadly weapon satisfies the force clause and stating that "[w]hile simple assault is not a violent felony, because it can involve the mere attempted or threatened offensive touching, the additional element of the dangerous weapon ratchets up the violence"); *Am*, 564 F.3d at 33 & n.9. Furthermore, in *United States v. Luna*, 649 F.3d 91 (1st Cir. 2011), the First Circuit held that Massachusetts armed robbery— which requires, at a minimum, "(1) 'the defendant was armed with a dangerous weapon' (though it need not be used); (2) 'the defendant . . . by words or gestures put [the victim] in fear' . . . ; and (3) 'the defendant took the money or . . . the property of another with intent to steal it'"— constitutes a violent felony under the force clause. *Id.* at 108 (quoting *Commonwealth v. Rogers*, 459 Mass. 249, 252 n.4 (2011) (last alteration original).

The question remains whether that reasoning applies when a defendant (or another participant in the crime) uses an object that only appears to be a firearm. In a different context, courts have repeatedly held that both unloaded guns as well as toy guns are "dangerous weapons." In *McLaughlin v. United States*, 476 U.S. 16 (1986), the Supreme Court held that an unloaded gun is a "dangerous weapon" within the meaning of the federal bank robbery statute,

18 U.S.C. § 2113.[5]  As is relevant here, the court reasoned, in part, that simply "the display of a gun instills fear in the average citizen."  *Id.* at 17-18.  Relying on similar reasoning, the First, Sixth, and Ninth Circuits have also held that the display of a toy gun constitutes the use of a "dangerous weapon" under § 2113.  *See United States v. Cannon*, 903 F.2d 849 (1st Cir. 1990); *United States v. Perry*, 991 F.2d 304 (6th Cir. 1993); *United States v. Martinez-Jimenez*, 864 F.2d 664 (9th Cir. 1989).  In *United States v. Benson*, 918 F.2d 1 (1st Cir. 1990), the First Circuit went even further and held that the sentencing enhancement in § 2113(d) applied where the defendant "announced to the teller that he had a gun and then placed his hand in his pocket in a menacing manner, revealing a metallic object which the teller, who was familiar with weapons, reasonably believed to be a gun."  *Id.* at 3.

Thus, it is well-recognized that the display of an object that only appears to be a firearm can instill, in the average person, a fear of imminent physical harm.  The display of what appears to be a firearm—particularly where, as required under New York law, it must in fact "appear to the victim by sight, touch or sound that he is threatened by a firearm," *Baskerville*, 457 N.E.2d at 756—therefore constitutes the use of a gesture that puts the victim in fear.  As the First Circuit established in *Luna*, the use of threatening words and/or gestures that put a victim in fear constitutes a threat of violent force.  *See* 649 F.3d at 108.  Furthermore, while the actual object being used may not itself be particularly dangerous, its use in the way required under New York law communicates to the victim an ability and a willingness to cause serious physical injury.

The First Circuit's recent decision in *United States v. Starks*, -- F.3d --, 2017 WL 2802755 (1st Cir. June 28, 2017), does not change the analysis.  In *Starks*, the First Circuit held

---

[5] Section 2113 provides for a greater maximum penalty for those who, in the course of committing a bank robbery, "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device."  18 U.S.C. § 2113(d).

that armed robbery under Massachusetts law does not constitute a violent felony under the ACCA. *Id.* at *13. However, while Massachusetts armed robbery requires that a defendant be armed with a dangerous weapon, it does not require that the defendant use, display, or otherwise make the victim aware of the present of the weapon. *Id.* at *9-10. The First Circuit concluded, in essence, that the mere *presence* of a dangerous weapon—without any use, display, or other means of making the victim *aware* of its presence—does not elevate non-violent force (such as purse-snatching) into violent force. *See id.* at 11-13. But N.Y. P.L. § 160.14(4) does require that a defendant display either a firearm or what appears to be a firearm. For the reasons stated above, such a display constitutes the threatened use of physical force.

The display of what appears to be a firearm therefore constitutes the threatened use of violent force, and § 160.15(4) is thus a "violent felony" under the force clause of the ACCA. *See Stuckey v. United States*, -- F. Supp. 3d --, 2016 WL 7017419, at *6 (S.D.N.Y. Dec. 1, 2016) (holding that N.Y. P.L. § 160.15(4) "ha[s] as an element the use of violent force") *appeal docketed*, No. 16-4133 (2d Cir. Dec. 9, 2016); *United States v. Gloss*, 661 F.3d 317, 318-19 (6th Cir. 2011) (holding that Tennessee aggravated robbery—which requires "'the intentional or knowing theft of property from the person of another by violence or putting the person in fear,' where that theft is '[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . .'"—is a violent felony under the force clause of the ACCA (quoting Tenn. Code Ann. §§ 39-13-401, 39-13-402) (first alteration in original)).

### (3)    Display by Another Participant in the Crime

Defendant contends that § 160.15(4) cannot constitute a predicate offense because one can be convicted under that subsection even if the aggravating element—the display of what

appears to be a firearm—was committed by another participant in the crime. For that reason, defendant contends that a conviction under § 160.15(4) cannot satisfy the intent requirement set forth in *Leocal v. Ashcroft*, 543 U.S. 1 (2004). That argument was recently rejected by the Southern District of New York, *see Stuckey*, 2016 WL 7017419, at *7-8, and this Court rejects it as well for much the same reason.

In *Leocal*, the Supreme Court held that driving under the influence of alcohol (as defined by Florida law) was not a violent felony because it did not require proof of any particular mental state and therefore did not require the "use . . . of physical force against the person or property of another," which requires "a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 7, 9-10. In holding that a conviction under § 160.15(4) satisfies *Leocal's* intent requirement, the court in *Stuckey* reasoned, in part, that *Leocal* requires only that a *crime* involve a mens rea of more than negligence, not that the use of violent force must be more than negligent. 2016 WL 7017419, at *8. On that point, this Court disagrees. *Leocal* appears to be clear that it is the "use [or attempted use or threat] of physical force against the person or property of another" that must be more than negligent. *See* 543 U.S. at 9-10.

However, the *Stuckey* court went on to conclude that § 160.15(4) satisfies *Leocal's* intent requirement even if it is read to apply to the use of force itself. First, the court reasoned that subsection four has been interpreted to require the intentional display of what appears to be a firearm. *Id.* (citing cases). Second, the court rejected the argument that *Leocal's* intent requirement "require[s] proof that each individual defendant in a multiple-defendant crime intended the use of violent force." *Id.* at 9. As the court reasoned:

> This argument exposes a tension between the focus on *crimes* and *elements* required by the categorical approach, and the focus on individual *defendants* that animates the ACCA's sentencing enhancement in the first instance. Indeed, it might seem illogical to say that Stuckey was himself convicted of a violent felony when it is

possible that he is being held strictly liable for violent actions of a codefendant of which he lacked any knowledge, let alone intent. But this is what current law under the ACCA and the categorical approach requires. It is also the better reading of the text of the statute, which refers to 'crimes' and 'elements' in defining a predicate 'violent felony.' Moreover, this approach comports with traditional understandings of accomplice liability.

*Id.* (emphasis original). That reasoning appears sound, and this Court will adopt it here. Thus, Lassend's conviction under N.Y. P.L. § 160.15(4) qualifies as a conviction for a crime of violence, and therefore is a predicate offense under the ACCA.

### 3. Conclusion

In summary, the Court concludes that three of Lassend's prior convictions—the 2010 Massachusetts ADW conviction, the 1998 New York conviction for attempted assault in the second degree, and the 1997 New York conviction for robbery in the first degree under § 160.15(4)—constitute predicate offenses under the "force clause" of the ACCA. Accordingly, Lassend's motion to vacate will be denied to the extent it seeks relief on the grounds that his sentencing under the ACCA was improper.

### C. Lassend's Second Supplemental Motion

In his second supplemental motion, filed *pro se*, petitioner contends that this court lacked jurisdiction over the charged violations of federal law. He appears to contend that the court lacked jurisdiction because the federal statute under which he was indicted (18 U.S.C. § 922(g)(1)) could not constitutionally be applied to him as the conduct underlying his arrest and indictment took place in a state (Massachusetts). He further contends that trial counsel's assistance was rendered ineffective due to his failure to investigate whether the relevant statute could be applied to conduct that took place within the states.

Petitioner's arguments must fail. He relies on *Morrison v. National Australian Bank, Ltd.*, 561 U.S. 247 (2010), for the proposition that federal criminal law does not apply outside of

the United States and therefore does not apply in Massachusetts. His reliance is misplaced.

*Morrison* simply states the "longstanding principle" that, absent a contrary intent from Congress,

legislation "is meant to apply only within the territorial jurisdiction of the United States," and not

within foreign lands. *Id.* at 255 (internal quotation marks omitted). Massachusetts is obviously

within the territorial jurisdiction of the United States. Furthermore, 18 U.S.C. § 922(g)(1) has

been held to be a valid exercise of Congress' power under the Commerce Clause. *See, e.g.,*

*United States v. Dupree*, 258 F.3d 1258, 1259-60 & n.1 (11th Cir. 2001) (collecting cases).

In addition, federal courts unquestionably have jurisdiction over criminal cases involving

charged violations of federal criminal law:

> Article III gives to the federal judicial branch authority—that is, subject matter
> jurisdiction—over all cases arising under the laws of the United States; and by
> statute Congress has given the federal district courts this authority over federal
> criminal cases in the first instance. 18 U.S.C. § 3231 (2000). Conventionally, a
> federal criminal case is within the subject matter jurisdiction of the district court if
> the indictment charges . . . that the defendant committed a crime described in Title
> 18 or in one of the other statutes defining federal crimes. . . . In such a case subject
> matter jurisdiction, that is to say, authority to decide all other issues presented
> within the framework of the case, exists.

*United States v. Gonzalez*, 311 F.3d 440, 442 (1st Cir. 2002). Because the indictment charged

Lassend with violations of a crime described in Title 18—namely, 18 U.S.C. § 922(g)(1)—the

court's jurisdiction was proper.

Finally, Lassend's ineffective assistance of counsel claim based on counsel's failure to

investigate the constitutionality of the statute under which he was indicted also fails. Because

the constitutionality of § 922(g)(1) is well-established, *see, e.g., Dupree*, 258 F.3d at 1259-60 &

n.1, counsel's failure to investigate or challenge its constitutionality was neither unreasonable

nor prejudicial. *See Acha*, 910 F.2d at 32 ("Trial counsel was under no obligation to raise

meritless claims. Failure to do so does not constitute ineffective assistance of counsel.");

*Victoria*, 876 F.2d at 1013 ("Since raising meritless points would not have affected the outcome of the trial, counsel's failure to raise them did not constitute 'ineffective assistance.'").

IV.     **Conclusion**

        For the foregoing reasons, the motion to vacate (Docket No. 140) and the supplemental motion to vacate (Docket No. 173) are DENIED.


**So Ordered.**

                                            /s/  F. Dennis Saylor
                                            F. Dennis Saylor IV
                                            United States District Judge

Dated:  July 11, 2017